ADANTÉ POINTER, ESQ., SBN 236229
PATRICK BUELNA, ESQ., SBN 317043
**POINTER & BUELNA, LLP**
**LAWYERS FOR THE PEOPLE**
155 Filbert St., Ste 208,
Oakland, CA 94607
Tel: 510-929-5400
Email: APointer@LawyersFTP.com
Email: PBuelna@LawyersFTP.com

MICHAEL A. SLATER (SBN 318899)
**THE SLATER LAW FIRM, APC**
251 South Lake Avenue, Suite 800
Pasadena, California 91101
E-mail: mslater@theslaterlawfirmapc.com
Tel: (818) 697-3051

Attorneys for Plaintiff, MATTHEW MURPHY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW MURPHY, an individual;<br><br>Plaintiff,<br><br>v.<br><br>CITY OF BARSTOW, a California public entity; JACOB GATTI, an individual; and DOES 1-20, inclusive,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES FOR:**<br><br>**(1)** Excessive Force in violation of the Fourth Amendment (42 U.S.C., § 1983)<br><br>**(2)** Battery (Cal. Gov. Code, § 820)<br><br>**(3)** Negligence (Cal. Gov. Code, § 820)<br><br>**(4)** Violation of the Tom Bane Civil Rights Act (Cal. Civ. Code, § 52.1)<br><br>**(5)** Municipal Liability (42 U.S.C., § 1983)<br><br>**DEMAND FOR JURY TRIAL** |

# COMPLAINT FOR DAMAGES

Plaintiff Matthew Murphy; for his Complaint for Damages against Defendants City of Barstow, Jacob Gatti and DOES 1 through 20, inclusive (hereafter collectively, "Defendants"); hereby alleges as follows:

## THE PARTIES

1. At the times of the violations of law alleged herein, and continuing to the present time, Plaintiff Matthew Murphy was and remains a competent adult, a citizen of the United States and a resident of the County of San Bernardino in the State of California.

2. Defendant City of Barstow (the "City") is a municipal public entity located within this judicial district and duly authorized and existing as such in and under the laws of the State of California. The City manages and operates the Barstow Police Department (the "BPD") and the BPD Officers and DOE Defendants identified herein. At the times of the violations of law alleged herein, the City was responsible for assuring that the actions, omissions, policies, procedures, practices and customs of the City, BPD and its employees / agents complied with the laws of the United States and the State of California – including with respect to the BPD Officers and DOE Defendants identified herein.

3. Plaintiff is ignorant of the true names and/or capacities of Defendants sued herein as DOES 1 through 20 (the "DOE Defendants") and, therefore, sue the DOE Defendants by such fictitious names. Plaintiff will amend this Complaint to allege the true names and capacities of the DOE Defendants when ascertained. Plaintiff believes and alleges that each of the DOE Defendants is legally responsible and liable for the incident, injuries and damages hereinafter set forth. Each of the DOE Defendants proximately caused Plaintiff's injuries and damages because of their conduct, negligence, breach of duty, management and/or violation of public policy. Each DOE Defendant is liable for their personal conduct, vicarious or imputed negligence, fault,

or breach of duty, whether severally or jointly, or whether based upon agency, employment, ownership, entrustment, custody, care, or control or upon any other act or omission. On information and belief, DOE Defendants are residents of the County of San Bernardino in the State of California.

4. All Defendants who are natural persons, including the DOE Defendants, are sued individually and in their capacities as officers, deputies, investigators, sergeants, captains, commanders, supervisors, and/ or civilian employees, agents, policy makers, and representatives of the City and the BPD.

5. In doing the acts alleged herein, Defendants, including the DOE Defendants, and each of them, acted within the course and scope of their employment with the City.

6. In doing the acts and/or omissions alleged herein, Defendants, including the DOE Defendants, and each of them, acted under color of authority and/or under color of law.

7. Due to the acts and/or omissions alleged herein, Defendants, including the DOE Defendants, and each of them, acted as the agent, servant, and employee and/or in concert with each of said other Defendants herein.

## JURISDICTION & VENUE

8. This Court has original jurisdiction over Plaintiff's federal law claims under 28 U.S.C. sections 1331 [federal question jurisdiction] and 1343(a)(3) [federal civil rights jurisdiction]. All claims for violations of the United States Constitution are brought pursuant to 42 U.S.C. section 1983. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. section 1367.

9. Venue is proper in this judicial district under 28 U.S.C. section 1391(b)(2), because a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred in this judicial district.

10. Pursuant to the California Tort Claims Act, Plaintiff presented a tort claim to the City within six months of the violations of law alleged herein, which the City rejected. As such, Plaintiff has exhausted their administrative remedies.

## FACTUAL ALLEGATIONS

11. This lawsuit arises from excessive force Barstow Police Department Officer Defendant Jacob Gatti used against Plaintiff Matthew Murphy at approximately 6:44 a.m. on January 19, 2024 near the 1100 block of East Virginia Way in the City of Barstow.

12. Specifically, Officer Gatti responded to the 1100 block of East Virginia Way, on information and belief, based upon a 9-1-1 call reporting a "Physical Disturbance"[1] in or around a residence on that block.

13. Upon Officer Gatti's arrival to the 1100 block of East Virginia Way, Officer Gatti exited his patrol vehicle and approached a parked civilian vehicle within which were three individuals (including Mr. Murphy) and demanded to see "[their] hands."

14. One of the three persons in the parked vehicle (who was sitting in the driver's seat) told Officer Gatti to "get him [Mr. Murphy] out of my car, officer," but gave no explanation as to why. (Mr. Murphy was sitting in the rear passenger-side seat.) (The actual reason the person in the driver's seat told Officer Gatti to get Mr. Murphy out of the car was because Mr. Murphy's legs were bleeding from having been bitten by a dog before Officer Gatti arrived – not because Mr. Murphy was committing or suspected of committing a crime.)

15. Seconds later, Mr. Murphy voluntarily exited the vehicle without incident. As he did, Officer Gatti pointed either a firearm directly at Mr. Murphy.

---

[1] *See* Paragraph 36, *infra*.

16. Once Mr. Murphy was outside the parked vehicle, Officer Gatti continued pointing a firearm directly at Mr. Murphy and repeatedly told Mr. Murphy "get on the ground," in response to which Mr. Murphy pleaded with Officer Gatti to "listen, listen, listen" and "hold up" with both of his hands in the air and palms facing Officer Gatti in a clear indication of surrender and non-violence.

17. In response, Officer Gatti told Mr. Murphy he was "not going to sit here and argue with [him]," grabbed Mr. Murphy's jacket (near his right shoulder), twisted him around, shoved him towards the vehicle he had just exited and demanded that he "put [his] hands behind [his] back."

18. Officer Gatti continued to push, twist and pull Mr. Murphy (by his jacket) for several seconds. When Mr. Murphy attempted to remove his jacket (in an effort to extricate himself from Officer Gatti's grip), Officer Gatti pushed and tackled Mr. Murphy down to the concrete street, grabbed Mr. Murphy by his neck (from behind) and slammed Mr. Murphy's face directly into the concrete street.

19. Next, Officer Gatti turned Mr. Murphy onto his back and shoved his elbow into Mr. Murphy's neck – pinning him to the ground.

20. After this, Officer Gatti took several steps away from Mr. Murphy and continued ordering Mr. Murphy to "stop resisting." This is despite the fact that Mr. Murphy was flat on his back and not moving.

21. Officer Gatti then ordered Mr. Murphy (who was still flat on his back and not moving) to put his hands behind his back, which Mr. Murphy immediately did.

22. Even though Mr. Murphy put his hands behind his back *as instructed*, and from a safe distance of no less than five feet away, Officer Gatti deployed his taser (in "dart-mode"; not "touch" or "drive-stun" mode[2]), striking Mr. Murphy on his stomach with its metal probes and electrocuting Mr. Murphy for five seconds.

---

[2] A tasers use in "touch" or "drive-stun" mode involves touching the taser to the body and causes temporary, localized pain only. Brooks v. City of Seattle, 599 F.3d 1018, 1026 (9th Cir. 2010), on reh'g en banc sub nom. Mattos v.

**COMPLAINT FOR DAMAGES**

5

23.  *While* Mr. Murphy screamed in pain from the electrical shocks of the taser strike to his stomach, Officer Gatti instructed Mr. Murphy to "turn around" and to "turn to [his] stomach" – this is despite the fact that Mr. Murphy ***could not move his body*** because he was experiencing Neuromuscular Incapacitation[3] (NMI) ***as a result of being tased***.

24.  Immediately after the first round of tasing stopped, Mr. Murphy did, indeed, roll over to face to face the ground. Mr. Murphy was face-down on his knees and not moving; this was, to any reasonable person, a clear indication of surrender and non-violence. Nonetheless, for reasons to which Mr. Murphy can only speculate, Officer Gatti continued yelling "stop resisting" and, and from a safe distance of no less than five feet away, deployed his taser for a second time (in dart-mode) – this time striking Mr. Murphy on his back and electrocuting Mr. Murphy for an additional five seconds.

25.  In response to the second taser strike to his back, Mr. Murphy screamed in pain, fell to the concrete street and ultimately settled on his back again.

26.  After this, Officer Gatti told Mr. Murphy to turn on his stomach several more times. Mr. Murphy did nothing in response; instead, Mr. Murphy laid lifeless and dazed, staring blankly upwards. At this point, blood was flowing out of Mr. Murphy's nose. Still, Officer Gatti was not satisfied, and, and from a safe distance of no less than five feet away, deployed his taser for a third time (in dart-mode), this time striking Mr. Murphy on his groin / abdomen and electrocuting him for an additional five seconds.

---

Agarano, 661 F.3d 433 (9th Cir. 2011). By contrast, "in dart-mode the taser uses compressed nitrogen to propel a pair of 'probes'—aluminum darts tipped with stainless steel barbs connected to the [taser] by insulated wires—toward the target at a rate of over 160 feet per second. Upon striking a person, the [taser] delivers a 1200 volt, low ampere electrical charge ... The electrical impulse instantly overrides the victim's central nervous system, paralyzing the muscles throughout the body, rendering the target limp and helpless." Mattos v. Agarano, 661 F.3d 433, 443 (9th Cir. 2011).

[3] Neuromuscular Incapacitation (NMI) occurs when electrical pulses temporarily interfere with the command-and-control systems of the body, leading to the loss of muscle control.

**COMPLAINT FOR DAMAGES**

(The foregoing-described uses of force Officer Gatti employed against Mr. Murphy will be referred to collectively herein as the "Subject Uses of Force.")

27. The Subject Uses of Force employed by Officer Gatti against Mr. Murphy were egregious, outrageous and shock the conscience; and/or were committed with oppression and/or malice; and/or were despicable and perpetrated with a willful and conscious disregard for Mr. Murphy's safety, health and wellbeing.

28. As a direct and proximate result of the Subject Uses of Force, Mr. Murphy suffered physical injuries, including, but not limited to: finger sprain (right hand); shoulder sprain (right); taser burns and puncture wounds; concussion; headaches; cognitive impairment and suspected nerve damage.

29. As a direct and proximate result of the Subject Uses of Force, Mr. Murphy also suffered emotional distress, depression, anxiety, humiliation and hypersensivity / fear around law enforcement.

## FIRST CLAIM FOR RELIEF

**Excessive Force in Violation of the Fourth Amendment (42 U.S.C., § 1983)**

**(Against Jacob Gatti and DOES 1 and 20)**

30. Mr. Murphy incorporates all the foregoing allegations of this Complaint as though fully set forth herein.

31. Allegations of excessive force are examined under the Fourth Amendment's prohibition on unreasonable seizures. Graham v. Connor, 490 U.S. 386, 388 (1989). When evaluating a Fourth Amendment claim of excessive force, a court must ask "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them[.]" Kaur v. City of Lodi, 263 F. Supp. 3d 947, 962 (E.D. Cal. 2017) (citing Graham, 490 U.S. at 397). This inquiry "requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake."

Graham, 490 U.S. at 396 (quoting Tennessee v. Garner, 471 U.S. 1, 8 (1985)); Scott v. Harris, 550 U.S. 372, 383 (2007).

32. The Ninth Circuit has articulated a three-step approach to the Graham balancing test. *See* Glenn v. Washington Cty., 673 F.3d 864, 871 (9th Cir. 2011). First, the district court "must assess the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted." Id. (internal quotation marks omitted). Second, the district court must "evaluate the government's interest in the use of force." Id. Finally, the district court must "balance the gravity of the intrusion on the individual against the government's need for that intrusion." Id. (internal quotation marks omitted).

33. The Subject Uses of Force Officer Gatti employed against Mr. Murphy were not objectively reasonable in light of the facts and circumstances confronting Officer Gatti.

34. As explained in more detail above, Officer Gatti struck Mr. Murphy three times with his taser (in dart-mode), each of which resulted in, *inter alia*, taser burn and puncture wounds. The nature and quality of the taser strikes were "intermediate significant level[s] of force." *See* Bryan v. MacPherson, 630 F.3d 805, 826 (9th Cir. 2010).

35. The government's interest in the Subject Uses of Force was, at best, minimal.

36. Under Graham, the Court evaluates the government's interest in the use of force by examining three core factors: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. Graham, 490 U.S. at 396; Courts also take into account (4) the extent of the injury inflicted when analyzing the force employed. Mendoza v. Block, 27 F.3d 1357, 1362 (9th Cir. 1994).

37. With respect to the first <u>Graham</u> factor, according to Officer Gatti's "Crime Summary Information Probable Cause Declaration," Officer Gatti responded to the 1100 block of East Virginia Way "in regards to a Physical Disturbance." (What specific "Physical Disturbance" was reported remains unknown to Mr. Murphy.)

38. According to Officer Gatti's "Crime Summary Information Probable Cause Declaration," when Officer Gatti arrived on scene, he observed Mr. Murphy in the "rear of a vehicle that was parked in front of the incident location […] [and] observed Mr. Murphy from the front of the vehicle hitting the driver of the vehicle[.]" (Mr. Murphy disputes he hit the driver of the vehicle.)

39. Still, even if Officer Gatti did observe Mr. Murphy hitting the driver of the vehicle, that suspected crime ranks low on the continuum and does not justify the "intermediate, significant" taser strikes against him.

40. Mr. Murphy was ultimately arrested for suspected violation of Penal Code 69(a) (resisting an executive officer). (Mr. Murphy disputes he was resisting Officer Gatti.)

41. Still, even if Mr. Murphy was, to some extent, resisting Officer Gatti's efforts to arrest him, obstructing a police officer's arrest efforts is generally not considered a serious crime for purposes of a Fourth Amendment excessive force analysis. *See* <u>Nelson v. City of Davis</u>, 685 F.3d 867, 881 (9th Cir. 2012) [cases dating back to 2001 have established that "[a] failure to fully or immediately comply with an officer's orders neither rises to the level of active resistance nor justifies the application of a non-trivial amount of force"]; <u>Gravelet–Blondin v. Shelton</u>, 728 F.3d 1086, 1093 (9th Cir. 2013) [where individuals "engag[e] in mere passive resistance," use of "non-trivial force" is unlawful]; <u>Davis</u>, 478 F.3d at 1055 (9th Cir. 2007) [noting that obstructing a police officer is generally not a severe crime for purposes of a Fourth Amendment excessive force analysis]; <u>Huber v. Coulter</u>, 2015 WL 13173223, at *1 (C.D. Cal. 2015), aff'd, 684 F. App'x 623 (9th Cir. 2017) ["[O]bstructing a police officer

is generally not considered a severe crime for purposes of a Fourth Amendment excessive force analysis."]. As such, the nature of the suspected crimes at issue provided little, if any, basis for Officer Gatti to employ the Subject Uses of Force against Mr. Murphy, which were significant and resulted in significant injuries.

42. With respect to the second Graham factor, Mr. Murphy did not pose an immediate threat to Officer Gatti's safety or anyone else's safety. As described in more detail above, Officer Gatti deployed struck and electrocuted Mr. Murphy with his taser three separate times from a safe distance of no less than five feet away and despite the fact that Mr. Murphy was compliant and obeying Officer Gatti's commands, including to put his hands behind his back and to get on his stomach.

43. With respect to the third Graham factor, as described in more detail above, Mr. Murphy did not actively resist or try to flee from Officer Gatti. **Even if** Officer Gatti perceived Mr. Murphy was passively resisting his efforts to subdue and arrest him, cases dating back to 2001 have established that "[a] failure to fully or immediately comply with an officer's orders neither rises to the level of active resistance nor justifies the application of a non-trivial amount of force." See Nelson v. City of Davis, 685 F.3d 867, 881 (9th Cir. 2012); Gravelet–Blondin v. Shelton, 728 F.3d 1086, 1093 (9th Cir. 2013) [where individuals "engag[e] in mere passive resistance," use of "non-trivial force" is unlawful]; Blankenhorn, 485 F.3d at 479-80 [finding that where a suspect defied an officer's order to kneel down to be handcuffed, the officers' need for force did not overcome the passively resistant misdemeanor suspect's right to be free from excessive force]; Sants v. Seipert, 2021 WL 465292, at *4 (E.D. Cal. 2021) ["The act of spinning in an officer's grasp and similar reactive defensive movements do not alone demonstrate a danger to an arresting officer or anyone else."]; Schroeder v. County of San Bernardino, 2019 WL 3037924, at *7 (C.D. Cal. 2019) [finding minimal danger in plaintiff's attempt to pull away from officer's grasp during traffic stop]; Stauffer v. City of Newberg, 2020 WL 1861675, at *10 (D. Or. 2020) [tripping a suspect and taking

him "to the ground" could be an excessive response to the suspect's "spinning towards [the officer] and attempting to pull away."].

44. With respect to the fourth Graham factor, as described in more detail above, Mr. Murphy's injuries were significant, including, but not limited to: finger sprain (right hand); shoulder sprain (right); taser burns and puncture wounds; concussion; headaches; cognitive impairment and suspected nerve damage; emotional distress; depression; anxiety; humiliation and hypersensivity / fear around law enforcement.

45. Balancing the nature and quality of the intrusion the Subject Uses of Force on Mr. Murphy's Fourth Amendment rights against the countervailing governmental interests at stake, the Subject Uses of Force were excessive in violation of the Fourth Amendment.

46. The Subject Uses of Force employed by Officer Gatti were egregious, outrageous and shock the conscience; and/or were committed with oppression and/or malice; and/or were despicable and perpetrated with a willful and conscious disregard for Mr. Murphy's safety, health and wellbeing.

## SECOND CLAIM FOR RELIEF
### Battery (Cal. Gov. Code, § 820)
### (Against Jacob Gatti and DOES 1 and 20)

47. Mr. Murphy incorporates all the foregoing allegations of this Complaint as though fully set forth herein.

48. As explained in more detail above, Officer Gatti struck Mr. Murphy three times with his taser (in dart-mode), each of which resulted in, *inter alia*, taser burn and puncture wounds.

49. The Subject Uses of Force employed against Mr. Murphy were intended by Officer Gatti to harm or offend Mr. Murphy.

50. A reasonable person in Mr. Murphy's position would have been offended by the Subject Uses of Force employed against him.

51. Mr. Murphy did not consent to the Subject Uses of Force employed against him.

52. The Subject Uses of Force employed against Mr. Murphy were egregious, outrageous and shock the conscience; and/or were committed with oppression and/or malice; and/or were despicable and perpetrated with a willful and conscious disregard for Mr. Murphy's safety, health and wellbeing.

53. As a direct and proximate result of the Subject Uses of Force employed against Mr. Murphy, Mr. Murphy was physically and emotionally damaged.

54. The Subject Uses of Force as described herein were done within the scope of Officer Gatti's employment with the City of Barstow. The City of Barstow is vicariously liable for the state law torts committed by Officer Gatti, including his battery against Mr. Murphy, pursuant to California Government Code section 815.2(a).

## THIRD CLAIM FOR RELIEF

### Negligence (Cal. Gov. Code, § 820)

### (Against Jacob Gatti and DOES 1 and 20)

55. Mr. Murphy incorporates all the foregoing allegations of this Complaint as though fully set forth herein.

56. Officer Gatti had a duty to exercise reasonable care when engaging with Mr. Murphy, even if he suspected Mr. Murphy of having committed certain crimes.

57. Officer Gatti his duty to exercise reasonable care when he employed the Subject Uses of Force against Mr. Murphy, because the Subject Uses of Force were unreasonable and excessive under the circumstances, as described in more detail herein.

58. As a direct and proximate result of the Subject Uses of Force employed against Mr. Murphy, Mr. Murphy was physically and emotionally damaged.

59. Officer Gatti's negligent conduct was done within the scope of his employment with the City of Barstow. The City of Barstow is vicariously liable for the

state law torts committed by Officer Gatti, including his negligence against Mr. Murphy, pursuant to California Government Code section 815.2(a).

### FOURTH CLAIM FOR RELIEF

**Violation of the Tom Bane Civil Rights Act (Cal. Civ. Code, § 52.1)**

**(Against Jacob Gatti and DOES 1 and 20)**

60. Mr. Murphy incorporates all the foregoing allegations of this Complaint as though fully set forth herein.

61. As described in more detail above, Officer Gatti used excessive force against Mr. Murphy in violation of the Fourth Amendment,

62. Officer Gatti's Fourth Amendment violations against Mr. Murphy demonstrated his specific intent to violate Mr. Murphy's Fourth Amendment rights.

63. Officer Gatti's Fourth Amendment violations were egregious, outrageous and shock the conscience; and/or were committed with oppression and/or malice; and/or were despicable and perpetrated with a willful and conscious disregard for Mr. Murphy's safety, health and wellbeing.

64. As a direct and proximate result of Officer Gatti's Fourth Amendment violations, Mr. Murphy was physically and emotionally damaged.

65. Officer Gatti's Bane Act violations were committed within the scope of his employment with the City of Barstow. The City of Barstow is vicariously liable for the state law torts committed by Officer Gatti, including his Bane Act violations, pursuant to California Government Code section 815.2(a).

### FIFTH CLAIM FOR RELIEF

**Municipal Liability (42 U.S.C., § 1983)**

**(Against the City of Barstow)**

66. Mr. Murphy incorporates all the foregoing allegations of this Complaint as though fully set forth herein.

67. The City of Barstow's customs, policies and/or practices were the moving force behind the Fourth Amendment violations alleged herein.

68. The City of Barstow, together with City policymakers and supervisors, maintained, among others, the following customs, policies and practices:

(a) The City of Barstow routinely fails to train its officers in the constitutional use of force on unarmed individuals, including the use of taser strikes and other types of significant force;

(b) The City of Barstow routinely fails to discipline officers who use excessive force; and

(c) The City of Barstow routinely maintains inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling misconduct by law enforcement officers of the City of Barstow;

69. As a direct and proximate result of the City of Barstow's customs, policies and/or practices, Mr. Murphy was physically and emotionally damaged.

## JURY TRIAL DEMAND

**WHEREFORE**, Plaintiff Matthew Murphy demands a trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Matthew Murphy prays for judgment against Defendants City of Barstow, Jacob Gatti and DOES 1 through 20, as to each claim for relief as follows:

**AS TO THE FIRST CLAIM FOR RELIEF** (Excessive Force in Violation of the Fourth Amendment):
1. For general and special damages according to proof at trial;
2. For punitive and exemplary damages;
3. For reasonable attorneys' fees pursuant to 42 U.S.C. section 1988(b);
4. For costs pursuant to Federal Rule of Civil Procedure section 54(d); and
5. For such other relief as the Court deems just and proper.

**AS TO THE SECOND CLAIM FOR RELIEF** (Battery)
1. For general and special damages according to proof at trial;
2. For punitive and exemplary damages; and
3. For such other relief as the Court deems just and proper.

**AS TO THE THIRD CLAIM FOR RELIEF** (Negligence):
1. For general and special damages according to proof at trial;
2. For punitive and exemplary damages; and
3. For such other relief as the Court deems just and proper.

**AS TO THE FOURTH CLAIM FOR RELIEF** (Violation of the Tom Bane Civil Rights Act):
1. For general and special damages according to proof at trial;
2. For statutory damages;
3. For punitive and exemplary damages;
4. For reasonable attorneys' fees pursuant to California Civil Code section 52.1;
5. For such other relief as the Court deems just and proper.

**AS TO THE FIFTH CLAIM FOR RELIEF** (Municipal Liability):
1. For general and special damages according to proof at trial;
2. For reasonable attorneys' fees pursuant to 42 U.S.C. section 1988(b);
3. For costs pursuant to Federal Rule of Civil Procedure section 54(d); and
4. For such other relief as the Court deems just and proper.

Dated:  September 6, 2024         **POINTER & BUELNA, LLP**
                                  **LAWYERS FOR THE PEOPLE**

                                  By:  */s/ Adante Pointer*
                                       ADANTE POINTER
                                       PATRICK BUELNA
                                       Counsel for Plaintiff,
                                       MATTHEW MURPHY

Dated:  September 6, 2024         **THE SLATER LAW FIRM, APC**

                                  By:  */s/ Michael A. Slater*
                                       MICHAEL A. SLATER
                                       Counsel for Plaintiff,
                                       MATTHEW MURPHY